**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x
**DESHAWN ALEXANDER,**

                              **Petitioner,**

                                                                              **ORDER**
  - against -                                               **07-CV-59 (NG)**

**HAROLD GRAHAM, Warden,**

                              **Respondent.**
-------------------------------------------------------------------x
**GERSHON, United States District Judge:**

DeShawn Alexander *pro se* filed a petition for a writ of habeas corpus pursuant to 28 U.S.C.

§ 2254, alleging he is in custody in violation of the Constitution and laws of the United States

pursuant to the judgment of a court of the State of New York. Alexander raises two grounds for

relief: (1) depraved indifference murder was not proven beyond a reasonable doubt; and (2) the trial

court's charge pursuant to *Allen v. United States*, 164 U.S. 492 (1896), improperly shifted the burden

of proof to petitioner. Because Alexander's claims are procedurally barred, his petition for habeas

corpus relief is denied.

**I.**       **BACKGROUND**

      **A.**       **Arrest and Trial**

On December 3, 2001, Alexander was arrested for the murder of Willie Lee, his sister's

boyfriend and father to one of her children. According to a written statement Alexander gave police,

a verbal dispute between him and Lee arose over five dollars' worth of marijuana, during which

"[Lee] started coming toward me. He started rushing me. I reached in my right-hand pocket and

pulled out the gun the cops found on me, and when he kept coming toward me, I didn't know what

he was going to do, so I just shot." Trial Transcript ("T") 62. The incident occurred inside the

apartment Alexander shared with his sister.  Alexander also gave a videotaped statement which

largely repeated his written statement that he shot hastily for fear that Lee possessed a weapon, but

added that Lee physically abused Alexander's sister.  Alexander was tried before a jury in New York

Supreme Court, Kings County (Dowling, J.).  In his grand jury testimony, introduced at trial,

Alexander testified that he shot Lee in self-defense when Lee began to choke him, and that he pulled

the gun from Lee's pocket, not his own.  At trial, Alexander testified that he did not shoot Lee, that

his sister had, and that, to protect her, he lied in his previous statements.  Forensic evidence showed

that Lee was shot in the upper chest, just above the clavicle at the nape of the neck on the left side

of his body, from a distance of less than 18 inches, and that he died from that wound, though not

immediately.  Another bullet was found in the window of a bedroom and a detective testified that,

in his opinion, the second shot was fired as Lee fled into the bedroom.  At trial, Alexander's sister's

testimony was stricken from the record because she failed to return to court before her direct

examination was complete.

After five days of deliberations and two notes from the jury indicating a deadlock, the court

gave an *Allen* charge over defense counsel's objection that no *Allen* charge be given and that the

court should declare a hung jury.  Two days later, on September 6, 2002, the jury convicted

Alexander of depraved indifference murder, New York Penal Law ("N.Y.P.L.") § 125.25[2], and

criminal possession of a weapon in the third degree, N.Y.P.L. § 265.02[4].  He was acquitted of

intentional murder, N.Y.P.L. § 125.25[1], and possession of a weapon in the second degree, N.Y.P.L.

§ 165.03[2].  Prior to sentencing, defense counsel moved to set aside the verdict pursuant to Criminal

Procedure Law ("C.P.L.") § 330.30(1), arguing that the jury's verdict was contrary to the weight of

the evidence and that the *Allen* charge was coercive and erroneously placed the burden of proof on

Alexander. The motion was denied on October 1, 2002 and Alexander was sentenced to concurrent prison terms of 25 years to life for murder and seven years for possession of a weapon.

### B.    Post-conviction History

On February 4, 2003, Alexander filed a direct appeal, through counsel, raising the following claims: (1) proof of depraved indifference murder was insufficient and the verdict was against the weight of the evidence; and (2) the trial court deprived petitioner of due process when it (a) gave an *Allen* charge that shifted the burden of proof to petitioner, (b) failed to give the admonitions required by C.P.L. § 270.40, and (c) failed to respond promptly and sensitively to juror concerns. By order dated April 11, 2005, the Appellate Division affirmed the conviction, holding:

> The defendant's contention that the evidence was legally insufficient to prove his guilt of murder in the second degree is not preserved for appellate review. The defendant's contention that the court's *Allen* charge shifted the burden of proof from the prosecution is also not preserved for appellate review. We decline to review these issues in the exercise of our interest of justice jurisdiction.
>
> The defendant's remaining contentions are without merit.

*People v. Alexander*, 17 A.D.3d 479, 479 (2d Dept. 2005) (citations omitted). On July 14, 2005, the New York Court of Appeals denied Alexander's application for leave to appeal. *People v. Alexander*, 5 N.Y.3d 784 (2005).

Subsequently, Alexander *pro se* made a motion to vacate his judgment of conviction under C.P.L. § 440.10 on the following grounds: (1) ineffective assistance of trial counsel for failure to preserve his claim that the evidence was insufficient for depraved indifference murder; (2) ineffective assistance of trial counsel for failure to elicit facts at trial supporting an affirmative defense of extreme emotional disturbance; (3) judicial misconduct for giving an *Allen* charge that shifted the

3

burden of proof to petitioner; (4) judicial misconduct for not responding carefully and sensitively to juror expressions of distress; and (5) judicial misconduct for erroneously submitting a legally insufficient count of depraved indifference murder.  By order dated October 26, 2006, the Supreme Court of New York, Kings County, denied the motion as "procedurally barred from collateral review and without merit."  The order also included the following incomplete sentence: "Based on previous appellate review, defendant's failure to raise the claims in a subsequent motion. C.P.L Section 440.10(2)."  Alexander did not seek leave to appeal this denial.[1]

On October 4, 2006, prior to the denial of his § 440.10 motion, Alexander filed the instant petition.  He raises the following claims: (1) depraved indifference murder was not proven beyond a reasonable doubt; and (2) the *Allen* charge shifted the burden of proof to petitioner.

## II.    DISCUSSION

### A.    Standard of Review

An application for a writ of habeas corpus on behalf of a person in custody pursuant to a state court judgment shall not be granted with respect to any claim that was adjudicated on the merits in the state court unless the adjudication of the claim: (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court," or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The habeas court must presume that the state court's determination of factual issues is correct unless the

---

[1] On July 9, 2008, the court issued an order directing the parties to advise the court as to whether petitioner timely appealed the October 26, 2006 order denying his motion to vacate his conviction.  By letter dated August 21, 2008, respondent's counsel advised the court he has no record indicating that petitioner filed an appeal.  Petitioner has not responded to the court's order.

petitioner demonstrates otherwise by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

A state court decision is "contrary to" clearly established Supreme Court precedent if it "contradicts the governing law set forth in [Supreme Court] cases or confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). A state court decision is "an unreasonable application of" clearly established Supreme Court precedent if, from an objective standpoint, the state court applied Supreme Court precedent unreasonably, not simply erroneously. *Id.* at 411. The Court of Appeals for the Second Circuit has refined this standard, holding "that while some increment of incorrectness beyond error is required . . . the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." *Jones v. Stinson*, 229 F.3d 112, 119 (2d Cir. 2000) (ellipses in original, internal quotations omitted).

A § 2254 petition shall not be granted unless the petitioner "has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1). A habeas petitioner's state remedies are considered exhausted when he has "(i) presented the federal constitutional claim asserted in the petition to the highest state court (after preserving it as required by state law in lower courts) and (ii) informed that court (and lower courts) about both the factual and legal bases for the federal claim." *Ramirez v. Attorney Gen.*, 280 F.3d 87, 94 (2d Cir. 2001).

Further, a habeas petitioner may have defaulted on his federal claims in state court by failing to meet the State's procedural requirements. In such a case, the independent and adequate state ground doctrine bars federal habeas corpus review. *Coleman v. Thompson*, 501 U.S. 722, 732 (1991). This doctrine provides that a federal court may "not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal

question and adequate to support the judgment." *Id.* at 729. However, "in all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule," a federal court may review federal habeas claims if "the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Id.* at 750; *Wainwright v. Sykes*, 433 U.S. 79, 87 (1977).

### B.  Procedural Default

Under New York law, the contemporaneous objection rule bars appellate review of alleged trial errors not properly preserved. C.P.L. § 470.05(2).[2] It is undisputed that Alexander's trial counsel failed to contemporaneously object to Alexander's claims that (1) depraved indifference murder was not proven beyond a reasonable doubt and (2) the *Allen* charge shifted the burden of proof to petitioner.[3] Thus, in denying Alexander's appeal because his claims were not preserved for appellate review, the Appellate Division relied on an independent and adequate state ground for its decision. Therefore, as Alexander makes no claim of fundamental miscarriage of justice, unless he can demonstrate both cause and prejudice, his claims are procedurally barred from federal review.

---

[2] C.P.L. § 470.05(2) provides, in part:

> For purposes of appeal, a question of law with respect to a ruling or instruction of a criminal court during a trial or proceeding is presented when a protest thereto was registered, by the party claiming error, at the time of such ruling or instruction or at any subsequent time when the court had an opportunity of effectively changing the same.

[3] With respect to the *Allen* charge claim, defense counsel's general objection to the giving of an *Allen* charge does not preserve for appeal a claim challenging the substance of the *Allen* charge. *See People v. Gray,* 86 N.Y.2d 10, 19 (1995) (to preserve a particular issue for appeal, defendant must specifically focus on the alleged error). In *People v. Arnold*, 226 A.D.2d 468, 468-69 (2d Dept. 1996), defendant's claim that the *Allen* charge was coercive was not preserved where defense counsel neither requested a specific *Allen* charge nor objected to the charge given.

6

*Wainwright v. Sykes*, 433 U.S. 72, 86-90 (1977); *Garcia v. Lewis*, 188 F.3d 71, 82 (2d Cir. 1999).

### C.     Ineffective Assistance of Counsel as Cause for Procedural Default

Alexander argues that the cause for the procedural default of his claims was ineffective assistance of trial counsel for failure to preserve them.  While ineffective assistance of counsel may provide cause for a procedural default, *Murray v. Carrier*, 477 U.S. 478, 488 (1986), "the exhaustion doctrine generally requires that a claim of ineffective assistance be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default." *Id.* at 489.

Although Alexander properly presented to the state court in his C.P.L. § 440.10 motion his claim of ineffective assistance of trial counsel for failure to preserve his claim that the evidence was insufficient for depraved indifference murder, he did not seek leave to appeal the denial of that motion.  He therefore has exhausted his ineffective assistance of counsel claim, but that claim itself is now procedurally barred.[4]  *See Nova v. Artus*, 2007 WL 1988456 at *3 (S.D.N.Y. July 6, 2007) (petitioner's ineffectiveness claim, raised on a C.P.L. § 440.10 motion, procedurally barred because he did not timely seek leave to appeal denial of motion).

Alexander did not, either on direct appeal or in any collateral motion, present his claim that failure to preserve his *Allen* charge claim was the result of ineffective assistance of counsel.  Therefore, this claim is unexhausted. *See Murray*, 477 U.S. at 489.  Having asserted no other ground for cause as to why he did not contemporaneously object to the *Allen* charge, Alexander has not demonstrated cause and therefore cannot overcome the procedural default of his *Allen* charge claim.

Because Alexander is unable, as a matter of law, to show cause for the procedural defaults,

---

[4] Alexander's time to seek leave to appeal the denial of his C.P.L. § 440.10 motion expired on or about November 25, 2006, pursuant to C.P.L. § 460.10(4)(a) (appeal must be made within 30 days after service upon defendant of the order).

I need not discuss whether he can demonstrate prejudice attributable to them. *See Stepney v. Lopes*, 760 F.2d 40, 45 (2d Cir. 1985).

### D. In Any Event, Alexander's Ineffectiveness Claims are Meritless

Were I to reach the merits of Alexander's ineffective assistance of counsel claims, I would find them meritless. Therefore, they would not provide cause for the procedural defaults of his insufficiency of the evidence and *Allen* charge claims.

In order to prevail on a claim of ineffective assistance of counsel, Alexander must demonstrate that (1) counsel's performance fell below an objective standard of reasonableness under prevailing professional norms, and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. *Strickland v. Washington*, 466 U.S. 668, 687-694 (1984). A petitioner must overcome a strong presumption that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690.

#### 1. Trial counsel was not ineffective for failing to raise insufficiency of the evidence with respect to depraved indifference murder.

As allowed at the time of his trial, Alexander was charged with intentional murder, N.Y.P.L. § 125.25(1), and depraved indifference murder, N.Y.P.L. § 125.25(2), in the alternative.[5] *See People v. Gallagher* 69 N.Y.2d 525, 529-530 (1987). Alexander argues that his trial counsel was ineffective for failing to preserve his claim that the proof of depraved indifference murder was insufficient

---

[5] Under N.Y.P.L. § 125.25(1), a person is guilty of second-degree murder when, "[w]ith intent to cause the death of another person, he causes the death of such person or of a third person." Under N.Y.P.L. § 125.25(2), a person is guilty of second-degree murder when, "[u]nder circumstances evincing a depraved indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another, and thereby causes the death of another person." A person acts "recklessly" with respect to a result when he is aware of and consciously disregards a substantial and unjustifiable risk that such result will occur." N.Y.P.L. § 15.05(3).

because it demonstrated only an intent to cause death, not recklessness under circumstances evincing

a depraved indifference to human life.

At the time of Alexander's trial, the law regarding depraved indifference murder was

reflected by *People v. Sanchez*, 98 N.Y.2d 373 (2002), under which

> [t]he mens rea of depraved indifference murder was recklessness and,
> as [the New York Court of Appeals] held in [*People v. Register*, 60
> N.Y.2d 270 (1983)], "under circumstances evincing a depraved
> indifference to human life" defined the factual setting, viewed
> objectively, in which the risk-creating conduct occurred.

*Policano v. Herbert*, 7 N.Y.3d 588, 602 (2006) (noting that *Sanchez* "ratified *Register*'s continued

authority" and discussing elements of depraved indifference murder in 2001).

In *Sanchez*, the defendant suddenly and spontaneously shot the victim in the upper left chest

from no more than 12-18 inches away after an argument. Sanchez argued that the evidence was

consistent only with intentional murder, but the Court of Appeals reasoned that Sanchez shot the

victim in a manner "not well-designed to cause imminent death," and

> the jury may also have taken into account the preexisting
> good relations between defendant and [the victim], and
> concluded that this was an instantaneous, impulsive shooting
> – perhaps to disable or frighten [the victim], rather than to kill
> him. Thus, a jury reasonably could have found that
> defendant's homicidal level of mental culpability was
> reckless rather than intentional.

*Sanchez*, 98 N.Y.2d at 377. The Court of Appeals further held that "defendant's shooting into the

victim's torso at point-blank range presented such a transcendent risk of causing his death that it

readily meets the level of manifest depravity needed to establish [depraved indifference] murder."

*Id.* at 378. In other words, as the Court of Appeals clarified later in *Policano*, "even though such an

attack by its very nature presents compelling circumstantial evidence of intent to cause death, [the

*Sanchez* court] considered the question of the defendant's state of mind to be a classic matter for the

9

jury," *Policano*, 7 N.Y.3d at 599, and "strong proof of intent did not foreclose the jury from finding recklessness and depraved indifference." *Id.* at 600. The Court of Appeals went on to state that, in 2001, New York law provided that "the very facts establishing a risk of death approaching certainty and thus presenting compelling circumstantial evidence of intent – for example, a point-blank shooting of the victim in the head – likewise demonstrated depraved indifference." *Id.* at 601.

In evaluating claims of insufficiency of the evidence, the court must view the evidence in the light most favorable to the government, drawing all permissible inferences in the government's favor to determine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979); *United States v. McDermott*, 245 F.3d 133, 136 (2d Cir. 2001). Viewing the evidence in the light most favorable to the prosecution, the evidence established that, in the midst of a confrontation, and as Lee came at him, Alexander shot Lee in the upper chest at a distance of less than 18 inches, and then fired a second shot that missed him. This scenario mirrors that in *Sanchez*, where the court held that "the firing of a loaded gun in an enclosed space within 18 inches of another person was undoubtedly imminently dangerous and presented a grave risk of death." 98 N.Y.2d at 386. A rational trier of fact could have considered that Alexander had known Lee as his sister's boyfriend and father to his niece, and concluded that, during the dispute, Alexander was scared because he did not know if Lee intended harm, and that, like the defendant in *Sanchez*, Alexander shot Lee in his upper chest rather than somewhere certain to cause death, intending to disable rather than kill him. *See id. at* 377.

Under *Sanchez*, whether Alexander intended to kill Lee or consciously disregarded the substantial risk that such a shot would cause Lee's death was "a classic matter for the jury." *Policano*, 7 N.Y.3d at 599. Indeed, assuming the evidence demonstrated "strong proof of intent," such proof, under *Sanchez,* "did not foreclose the jury from finding recklessness and depraved

indifference ." *Policano,* 7 N.Y.3d at 600, citing *Sanchez*, 98 N.Y.2d at 378. Alexander's jury could

reasonably have found that his conduct "presented such a transcendent risk of causing [his victim's]

death that it readily [met] the level of manifested depravity needed to establish [depraved

indifference] murder." *Sanchez*, 98 N.Y.2d at 378.

Thus, had Alexander's trial counsel objected to the sufficiency of the evidence of depraved

indifference murder on the ground that the jury would be warranted only in finding intentional

murder, such an objection would have been unsuccessful. Trial counsel's failure to make that

objection therefore does not fall below "an objective standard of reasonableness," *Strickland*, 466

U.S. at 687-88, and, absent counsel's failure to object, "the result of the proceedings would [not] have

been different," *id*. at 694. In other words, "[f]ailure to make a meritless argument does not amount

to ineffective assistance." *United States v. Arena*, 180 F.3d 380, 396 (2d Cir. 1999).

After Alexander's trial, New York's interpretation of the element

> "under circumstances evincing a depraved indifference to human
> life" . . . gradually and perceptibly changed from an objectively
> determined degree-of-risk standard (the *Register* formulation) to a
> mens rea, beginning with . . . [*People v. Hafeez*, 100 N.Y.2d 253
> (2003)] . . . and ending with [*People v. Feingold*, 7 N.Y.3d 288
> (2006)].

*Policano,* 7 N.Y.3d at 602-03. However, this court must review trial counsel's "conduct on the basis

of the facts of the particular case, 'viewed as of the time of counsel's conduct.'" *Mayo v. Henderson*,

13 F.3d 528, 533 (2d Cir. 1994), quoting *Strickland*, 466 U.S. at 690. Indeed, "[c]ounsel is not

required to forecast changes in the governing law." *Id*. Thus, Alexander's trial counsel was not

ineffective for failing to anticipate the *Hafeez*-to-*Feingold* progression. *See Cruz v. Conway*, 2007

WL 1651855 at *7 (E.D.N.Y. June 6, 2007) (petitioner shot victim in the back and shot him again

after he fell; counsel not ineffective for failure to object to the sufficiency of evidence as to depraved

indifference murder because controlling law was *Register*); *see also Crespo v. Fischer*, 2006 WL

11

3486805 at *7-8 (S.D.N.Y. November 27, 2006) (petitioner placed a plastic bag over victim's head, sealed it at the neck, covered the victim's head and face with duct tape, then kicked victim's head and remained present until victim died; counsel not ineffective for failure to object to the sufficiency of evidence as to depraved indifference because controlling law was *Sanchez/Register*); *Farr v. Greiner*, 2007 WL 1094160 at *23 (E.D.N.Y. April 10, 2007) (petitioner fired four shots at close range to victim's head, neck, and torso; counsel not ineffective for failure to object to the sufficiency of evidence as to depraved indifference murder because controlling law was *Register*).

In sum, Alexander's trial counsel was not ineffective for failing to object to the sufficiency of the evidence of depraved indifference murder on the ground that the evidence demonstrated only intent, nor was he ineffective for failing to foresee the change in New York law described above. Therefore, even were this ineffectiveness claim not procedurally barred, I would reject it, rendering it inadequate to overcome the procedural default of his insufficiency claim.

### 2.  Trial counsel was not ineffective for failing to object to the substance of the trial court's *Allen* charge.

Alexander claims that his trial counsel was ineffective for failing to object to the substance of the trial court's *Allen* charge which, he argues, shifted the burden of proof to him.  Even if this ineffectiveness claim were not unexhausted, I would find it meritless because, as the *Allen* charge was not improper, trial counsel was not ineffective for not objecting to it.  Therefore, this ineffectiveness claim would be insufficient to overcome the procedural default of his underlying *Allen* charge claim.

"A traditional *Allen* charge reminds the jurors about the importance of obtaining a verdict and encourages jurors to listen 'to each other's arguments' while also emphasizing that 'the verdict must be the verdict of each individual juror, and not a mere acquiescence in the conclusion of his fellows.'" *Smalls v. Batista*, 191 F.3d 272, 275 n.1 (2d Cir. 1999), quoting *Allen v. United States*, 164 U.S. 492,

501 (1896).  Further,

> [w]hether an *Allen* charge was appropriate in a given case hinges on whether it tends to coerce undecided jurors into reaching a verdict. Coercion may be found when jurors are encouraged to abandon, without any principled reason, doubts that any juror conscientiously holds as to a defendant's guilt.

*United States v. Melendez*, 60 F.3d 41, 51 (2d Cir. 1995).  "[A] challenged portion of the jury instructions 'may not be judged in artificial isolation,' but rather must be judged as the jury understood it, as part of the whole instruction, and indeed, as part of all the proceedings that were observed by the jury." *Chalmers v. Mitchell*, 73 F.3d 1262, 1267 (2d Cir. 1996), quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973).

After five days of deliberation and two jury notes indicating a deadlock, the trial court gave an *Allen* charge, of which petitioner challenges the following portion:

> And jurors, by your oath you swore that if you had a reasonable position on any relevant point, or any material elements based on the evidence or lack of evidence, and one or more of your fellow jurors questioned you about it, you would be willing and able to give what you believe is a fair and calm explanation for your position, whether it be for acquittal or for conviction.

Charge Transcript 767-68.

In an effort to show that this charge shifted the burden to him, Alexander relies on *People v. Antommarchi*, in which the New York Court of Appeals held that a particular *Allen* charge "went beyond permissible bounds by placing on each juror the express duty of giving a 'fair calm explanation for [his] position,'" and that

> an instruction that requires jurors to supply concrete reasons 'based upon the evidence' for their inclination to acquit implicitly imposes on defendants the burden of presenting a defense that supplies the jurors with the arguments they need to legitimize their votes.

80 N.Y.2d 247, 252 (1992).  Notably, "*Antommarchi* is a state decision, not controlling to federal

13

constitutional questions." *Fluellen v. Walker*, 2000 WL 684275 at \*9 (S.D.N.Y. May 25, 2000).

"[T]he issue of jury coercion is of federal constitutional dimension." *Campos v. Portuondo*, 193

F.Supp.2d 735, 745 (S.D.N.Y. 2002), citing *Lowenfield v. Phelps*, 484 U.S. 231, 240-41 (1988).

The *Allen* charge in this case is virtually identical to the one considered in *Simpson v. West*,

2006 WL 1367412 at \*7 (E.D.N.Y. May 18, 2006), in which Judge Garaufis persuasively identified

the reasons it satisfied constitutional requirements. The *Allen* charge was not improper for instructing

that jurors be prepared to explain their positions and "listen to the views and arguments of [their]

fellow jurors" and "carefully and calmly and dispassionately" weigh the evidence. T. 768. Like the

charge in *Simpson*, this charge "did not shift the burden of proof, but rather urged each juror to

discuss his or her position in an effort to reach a verdict." *Simpson*, 2006 WL 1367412, at \*6-7; *see*

*also Campos,* 193 F.Supp.2d at 748 (*Allen* charge not improper because it "never singled out a

minority of jurors, normally of great concern in cases of this kind"). It instructed the jury merely that

each juror must provide other jurors with "a fair and calm explanation for [his or her] position,

whether it be for acquittal or for conviction." T. 767-68.

Moreover, the *Allen* charge included the following cautionary language:

> However, jurors, under no circumstances may any of you compromise a conscientiously held individual position in order to arrive at a unanimous verdict. No juror should ever surrender his or her honest conviction as to the weight or effect of evidence solely because of the opinion of one fellow juror, or for the mere purpose of returning a verdict. In other words, a juror has a right, if convinced he or she is correct, to stick to his or her opinions and conclusions. . . . . Again, as I said, I'm not asking anyone to surrender any conscientiously held position because, again, you have a right, if you believe you are right, to stick to your conclusion.

Charge Transcript 769-70. *See United States v. Ruggiero*, 928 F.2d 1289, 1299 (2d Cir. 1991)

(cautionary language directing jurors not to surrender any conscientiously held views "usually"

negates coercion).  The court also told the jurors that, although a verdict ideally would be reached, one was not required.  T. 767-69.

Viewing the jury instructions as a whole, the trial court's *Allen* charge did not shift the burden of proof to petitioner.  As the charge was not improper, trial counsel was not ineffective for failing to object to it.  *See Arena*, 180 F.3d at 396.  Therefore, even if this ineffectiveness claim were not unexhausted, it still could not constitute cause for the procedural default of petitioner's underlying *Allen* charge claim.

## III.    CONCLUSION

The petition for a writ of habeas corpus is denied.  As petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue.  28 U.S.C. § 2253.

SO ORDERED.

*/S/ Nina Gershon*
**NINA GERSHON**
**United States District Judge**

Dated:  September 11, 2008
        Brooklyn, New York